Thomas v. Shea.

GOMER THOMAS, APPELLEE, V. PETER W. SHEA, APPELLANT.

FILED FEBRUARY 29, 1912.   No. 16,602.

1. **Trial: INSTRUCTIONS: SUBMISSION OF PLEADINGS TO JURY.** A judgment will not be reversed because the trial court, instead of stating the issues of fact in concise form, gave an instruction containing the substance of the petition, answer and reply, and permitted the jury to take the pleadings with them to the jury room, where such issues were fairly stated in other instructions, and it appears that the appellant was not prejudiced by the erroneous practice adopted.

2. **Libel: TRIAL: DIRECTING VERDICT.** An instruction to find for plaintiff in an action for libel, unless the charges therein and each and every part thereof are found to be true, may not be prejudicial to defendant, as requiring stronger proof of the truth of the charges than substantial accuracy and as demanding proof of immaterial statements, where plaintiff, on undisputed evidence, was entitled to a verdict for nominal damages at least.

3. ——: ——: **INSTRUCTIONS: REFERENCE TO SPECIFIC EVIDENCE.** In the trial of an action for libel, where evidence is admitted to prove charges not pleaded for the purpose of showing malice, it is not error for the trial court in limiting such evidence to that purpose alone to single it out in an instruction.

4. **Appeal: INSTRUCTIONS.** On appeal, harmless error in an instruction is not a ground of reversal.

5. **Trial: WITHDRAWAL OF EVIDENCE BY INSTRUCTION.** The admission of improper evidence may be cured by an instruction withdrawing it from the jury.

6. **Libel: DAMAGES.** In an action for libel resulting in injury to plaintiff in his profession of attorney at law, a verdict for $3,000 *held* not excessive.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*C. M. Miller* and *W. S. Morlan,* for appellant.

*John Everson, J. G. Thompson* and *Gomer Thomas,* contra.

ROSE, J.

This is an action for libel, in which plaintiff recovered a judgment for $3,000. Defendant has appealed.

The libel was published a few days before the general election in 1908, when defendant was a member of the county board of Harlan county, and when plaintiff, to succeed himself as county attorney, was the candidate of the democratic, people's independent and republican parties. The libel is a six-column document resembling in appearance the front page of a metropolitan daily. It is addressed "To the Taxpayers of Harlan County," in bold letters nearly an inch high, emphasized by a heavy ruleline. It is introduced by a scarehead warning that plaintiff never would have received the nomination of any party had the honest citizens of Harlan county known how he served them as county attorney during the past two years. A discussion of five cases of public interest follows. If the statements published by defendant are true, plaintiff, in each case, neglected his official duties or betrayed his trust as county attorney. Portions of that part of the publication relating to the cases may be summarized thus:

(1) "Mullally Case." Mullally failed to report for taxation a deposit of money in excess of $17,000, and the assessor was directed by the county board to list it. Mullally appealed to the district court, and there, through a technicality, defeated the county. Afterward plaintiff was elected county attorney, and "advised the board to order an appeal to the supreme court and that he would win the case for the county." An appeal was accordingly taken and briefs costing the county $16 were printed. When plaintiff was present in the supreme court the case was stricken from the docket for want of briefs. "It developed later that the briefs which meant $400 to Harlan county were securely locked in the county attorney's desk in Alma."

(2) "The Wirt Cattle Company's Decision." The

county board refused to strike from the assessment rolls a list of fat cattle on the ground they had been assessed in Colorado. The owner appealed to plaintiff, "who promptly ruled that the cattle were exempt from taxation and that they should be stricken from the schedules." The board "called in all of the Alma attorneys," and stated its positions and findings and plaintiff's opinion over-ruling the same. They decided plaintiff's opinion was not sound, and that such cattle should be listed, thus saving several thousand dollars to the county.

(3) "Brandt v. Olson." Brandt fenced a highway, and enjoined Olson, a road overseer, from interfering with the fence. The case was appealed to the supreme court. A former county attorney wrote the briefs and turned them over to plaintiff as his successor. Defendant notified other attorneys to be on the alert, expressing the belief that plaintiff was against the county. Brandt's attorney made a motion to strike the case from the docket of the supreme court for want of a brief on behalf of the county, but admitted he had been served with a copy thereof. The court gave the county five days to furnish the missing briefs and the case was argued. Later another attorney found the briefs locked in plaintiff's desk at Alma. The supreme court decided the case in favor of the county, but a rehearing was granted on motion of Brandt. When the case was reargued the county was represented by attorneys Morlan and Miller, but plaintiff was in the supreme court room at the time, and his expenses were paid by the county, "supposing that he was there in the county's interest in the 'Mullally Case.' "

(4) "The Lucas Murder Trial." The trial and acquittal of this man by a Harlan county jury on a change of venue from Phelps county, where he had been charged with murder, is well known. "The stigma resulting from this verdict must remain a blot on the fair name of our county, which will require years to wipe out. Don't forget that at the time of the trial Gomer Thomas was not only county attorney and acting for the county, but

was also in possession of a very liberal retainer from
Phelps county to further assist in the selecting of a jury."
After the first trial in Harlan county, resulting in a ver-
dict of guilty, defendant was told by one of the jurors
that he was approached by two Harlan county citizens,
"one of whom made a great effort to influence his verdict
in that case, and that he could have made $1,000 for a
dishonest verdict." Defendant kept this information in
confidence until a new trial was ordered by the supreme
court. Before the retrial he told the district judge to
acquaint plaintiff with what the juror had said. When
the county board met, after Lucas had been acquitted, de-
fendant informed its members and plaintiff what the
juror had reported and insisted that the matter should
be investigated. At the next meeting plaintiff informed
the board that he had seen the juror, who related the con-
versation substantially as repeated by defendant. There
were other suggestions of attempted bribery. Plaintiff
stated to the board that the evidence of bribery was in-
sufficient to convict the offenders. Defendant offered a
resolution requesting the district judge to convene a
grand jury to probe the matter. The resolution was not
adopted, but defendant was told by a supervisor that such
action would be a useless expenditure of county funds so
long as Gomer Thomas remained county attorney. "It
certainly could not add to Mr. Thomas' reputation as
county prosecutor to have all the ex-professional jury-
fixers and railroad lobbyists lined up in the interest of
his nomination."

(5) "The K. C. & O. Deal." Plaintiff, as county at-
torney, read and the board adopted a resolution ordering
him to begin an action to annul as unconstitutional the
merger of the Kansas City & Omaha Railroad with the
Burlington & Missouri River Railroad. Ten months later
he entered into a deal with the Burlington & Missouri
River Railroad Company by which the latter deeded to
the town of Alma some 40 acres of land, the consideration
being $1, with the implied understanding that the action
would not be pushed.

The foregoing is only a brief summary of a portion of the libel, but it indicates the nature of the accusations, when considered with the conclusion which is here quoted:

"I have *went* into these five cases in some length, and have produced sufficient facts to convince any fair man that County Attorney Thomas, in the five cases cited, gave the county, who pays him his monthly salary, the worst end of the bargain. And, as a matter of fact, Mr. Thomas could not have rendered a greater service to the opposition had he actually been retained by them and accepted their money.

"I fully understand how difficult the undertaking, with at least a show of indorsement by the three largest political parties, and the court house ring at his beck and call, it would be to bring about the defeat of Gomer Thomas for the office which he now holds, and which he brought into disgrace along with the fair name of our county; nothing short of a revolution can accomplish it. But history chronicles successful revolutions.

"Should this revolution be brought about, the taxpayers of Harlan county will witness a grand exodus of jury-fixers, political porch climbers and petty criminals such as this county never witnessed before in its history.

"Should C. M. Miller succeed to the office of county attorney, our people can rest assured that, in the event of another Lucas trial in the county, they will not be compelled to hang their heads for shame when the fact is mentioned. They can rest assured that their interests will be looked after regardless of the wealth of the offender against our laws. And land donations will not suffice to purchase immunity to a faction of our people when the interests of the taxpayers of the entire county are involved.          Your humble servant,
          "P. W. SHEA, Orleans, Neb."

In his answer defendant admits that he caused the article pleaded in the petition to be printed and that he disseminated it throughout Harlan county. He pleads

that plaintiff at the time was a candidate for the office of county attorney and that the publication was a privileged communication. He further states in his answer: "Each and all the statements contained in said article of and concerning said plaintiff and his doings in said office were true and the same were published and printed without malice, and the same was a communication made by this defendant to the electors of said county in good faith for the sole purpose of advising them of the real character and qualifications of the plaintiff for the office he was then seeking."

The first assignment of error relates to an instruction, wherein the trial court stated to the jury the substance of the pleadings, and closed with these words: "You will be permitted to take the pleadings, viz., the petition, answer and reply to the jury room with you, where you will find the claim of the parties fully set out." The objection to the instruction is that the trial court gave the jury a copy of the petition, answer and reply, without a concise statement of the issues of fact, and allowed the pleadings to be taken to the jury room. With the exception of the libel, which is embodied in the petition and attached as an exhibit, the pleadings are brief. The substance of the allegations of both parties seems to be fairly stated in the instruction. Though the issues were not as concisely stated as they should have been, defendant nevertheless was protected by other parts of the charge. In another instruction the jury were told that the first issue of fact was whether defendant was actuated by malice in publishing the article in controversy. They were also directed to find in his favor unless plaintiff showed the existence of such malice by a preponderance of the evidence. Attention has not been directed to a request by defendant for an instruction containing a precise statement of all of the issues of fact raised by the pleadings. While there is no excuse for the practice adopted by the trial court, the record does not show that the error was prejudicial to defendant.

Defendant also challenges an instruction containing this language: "It is your duty to find a verdict in favor of the plaintiff and against the defendant, unless you further find from the evidence that the charges in said article, and each and every part thereof, to be true as alleged in the answer of defendant, and that the same was published without malice on the part of the defendant, and that its publication was with good motives and for justifiable ends." The argument is that, contrary to this instruction, defendant was in law only required to prove that the material parts of the accusations were substantially true and that the publication was made with good motives and for justifiable ends, without additional proof that he acted without malice. Neither party should have been embarrassed by the obvious blunder disclosed by the language quoted. While defendant pleaded in his answer that "each and all the statements contained in said article of and concerning said plaintiff and his doings in said office were true," this plea did not justify the use of a similar form of expression in the charge to the jury, since the publication contained many immaterial statements which were wholly disregarded in the making of the defense and which could not possibly have injured plaintiff, if shown to be true. There are reasons, however, why the judgment should not be reversed for the error in this instruction. The publication was libelous *per se*. Defendant stated on the witness stand that he sent a few copies outside of Harlan county. He admitted that he sent one copy to Adams county to the district judge before whom defendant practiced his profession. He also sent a copy to Holdrege to the county attorney of Phelps county. These communications were not privileged. There is no proof that defendant circulated the libel outside of Harlan county with good motives and for justifiable ends. To this extent his malice is conclusively established by his own proofs. It follows that when the case was submitted to the jury plaintiff was entitled to a verdict for nominal damages at least.

Plaintiff's right to a verdict having thus been shown, was the erroneous instruction prejudicial to defendant? The first instruction given by the court contained a statement of the pleadings. The language criticised is found in the next instruction, which is here copied in full: "You are instructed that the defendant has admitted that he published and circulated the article set forth by plaintiff. You are also instructed that said article charges the plaintiff with official misconduct, and of corruption in the discharge of his said office, which as a matter of law are libelous charges in themselves, and you are instructed that it is your duty to find a judgment in favor of the plaintiff and against the defendant, unless you further find from the evidence that the charges in said article, and each and every part thereof, to be true as alleged in the answer of defendant, and that the same was published without malice on the part of the defendant, and that its publication was with good motives and for justifiable ends." It will be observed that the charges which defendant, to escape liability, was required to prove were preceded in the same instruction by these words: "Said article charges the plaintiff with official misconduct, and of corruption in the discharge of his said office." It thus appears that the trial court, in requiring proof of the charges, and of "each and every part thereof," had reference to charges of official misconduct and of corruption in office. This is a fair deduction from all of the instructions, which must be interpreted together. Defendant requested and the court gave an instruction that "under the evidence in this case each part of the entire publication set forth in plaintiff's petition is entitled to equal credit with all other parts, and in arriving at a verdict the article alleged to have been published is to be construed by you as a whole, and each part given such construction as will make it consistent, if possible, with all other parts of the same writing." The trial court went further and also instructed the jury: "The defendant had a perfect right, by virtue of being an elector and

member of the board of supervisors of said county, and
it was his privilege, to give the public any information on
public matters that came within his knowledge and give
a reasonably correct account of whatever occurred before
the board of supervisors, not necessarily in every word,
or every particular, but as to the substance; that is, he
had a right to give a correct account of what he saw and
knew. If it turns out that it is reasonably correct and
he did not go beyond his duty in magnifying or making
false statements or anything to show express malice in
the case, he had a right to so do, and is in no manner
liable to the plaintiff for so doing." In other instructions
the jury were told that the truth, when published with
good motives and for justifiable ends, is a sufficient de-
fense; that if the statements made were substantially
true defendant had a right to publish them, because they
were privileged; and that the verdict should be in favor
of defendant, unless plaintiff showed by a preponderance
of the evidence the existence of malice on part of defend-
ant in publishing the article. It has already been shown
that plaintiff on undisputed facts was entitled to a ver-
dict. The instruction criticised related to the liability of
defendant for publishing the libel, and not to the measure
of damages. When all of the instructions are considered,
the jury were not instructed that, if defendant had failed
to prove the exact truth of immaterial accusations, they
must find for plaintiff. The conclusion is that the instruc-
tion does not contain prejudicial error.

Another instruction is criticised on the ground that it
gives undue prominence to a part of the evidence. The
trial court permitted plaintiff to prove that defendant
subsequently published or uttered statements other than
those found in the original accusations. The instruction
assailed contains a reference to evidence of this character.
By it the jury were told the burden was on plaintiff to
convince them by a preponderance of the evidence that
defendant acted maliciously in publishing his circular.
They were also directed, in determining the question of

malice, to "take into consideration all the evidence bearing on the truth or falsity of the facts set out in the circular complained of in the petition, and any other publication or statements made by the defendant, relative to the plaintiff, similar to those charged in the circular complained of, if any such appeared in the evidence, the circular itself, and all the facts and circumstances surrounding the publication." Reference was made to the testimony as to other accusations for the sole purpose of limiting the jury's consideration thereof to the question of malice. This is clearly shown by another instruction directing the jury to consider such evidence for that purpose alone, and making it plain that it could not be considered to prove or enhance damages. The instruction was favorable to defendant, and properly singled out the evidence described with the object of limiting its consideration to the purpose for which it was admitted.

Inconsistency in instructions on the burden of proof is the basis of another assignment of error. Considering the charge as a whole, the instructions on the burden of proof seem to be as favorable to defendant as the law permits. The apparent conflict relates to proof essential to a recovery, or to the establishment of a defense, and not to the measure of damages. For reasons already stated, plaintiff was clearly entitled to a verdict. Under this assignment prejudice to defendant is not shown by ·the record.

It is further argued that the trial court erred in admitting in evidence proof of libels and slanders having no relation whatever to the substance or import of the publication on which the action is based. It is conceded by defendant that previous publications or repetitions similar to accusations pleaded in an action for libel are admissible in evidence to show malice. *Bloomfield v. Pinn*, 84 Neb. 472; *Fitzgerald v. Young*, 89 Neb. 693. It is insisted, however, that proof of independent charges which may be made the subject of separate suits is inadmissible. This proposition has been ably presented by counsel for de-

fendant, but a determination of the question does not seem to be necessary, for the following reasons: The trial court instructed the jury that damages could not be proved or enhanced by evidence of that character. It has often been held that the admission of improper evidence may be cured by an instruction withdrawing it from the jury. *American Building & Loan Ass'n v. Mordock,* 39 Neb. 413; *Nelson v. Jenkins,* 42 Neb. 133; *Chicago, R. I. & P. R. Co. v. O'Neill,* 58 Neb. 239; *Missouri P. R. Co. v. Fox,* 60 Neb. 531; *Scott v. Flowers,* 60 Neb. 675. Plaintiff's right to recover was fully established by other evidence not disputed, and the jury were not permitted to consider independent accusations in determining the measure of recovery. It seems clear, therefore, that if errors were committed in the manner stated they were not prejudicial to defendant.

Excessive recovery is another ground of complaint. The evidence justifies findings that plaintiff neglected no official duty to the injury of the county, and that all statements reflecting upon his integrity, motives and conduct, or upon his ability and uprightness as a lawyer or public officer, are false. The entire publication was a vicious assault upon plaintiff in his profession of attorney at law. It strikes at his means of livelihood. If the accusations are true, he is unfit to be county attorney or to act professionally for an honest client. Those who believe the charges will not employ him, if they want honest service. Defendant admitted on cross-examination that 2,500 copies were printed and that he distributed 1,400 by mail. In determining compensatory damages in such a case, no method of exact computation can be devised, and the amount of recovery must generally be left to the sound discretion of the jury. Having asserted on appeal that the recovery is excessive, it is incumbent on defendant to establish the error. The reasons urged are not convincing, and substantial grounds for holding that the verdict is excessive have not been found in an examination of the entire record. All of the assignments of error

56

have been carefully examined without finding a reversible error.

AFFIRMED.

REESE, C. J., took no part.