CHARLES J. DEUPREE, APPELLEE, v. SIDNEY D. THORNTON,
JR., ET AL., APPELLANTS.

FILED FEBRUARY 26, 1915. No. 17,942.

Conspiracy: DAMAGES. A mere tacit understanding between conspira-
tors to work to a common unlawful purpose is all that is essen-
tial to a guilty combination. Damages caused thereby may be
recovered by the party injured.

APPEAL from the district court for Antelope county:
ANSON A. WELCH, JUDGE. *Affirmed.*

*S. D. Thornton* and *M. F. Harrington,* for appellants.

*H. C. Vail* and *E. D. Kilbourn, contra.*

HAMER, J.

This is an appeal from the judgment of the district court
for Antelope county. The case was tried before Judge
Welch and a jury. The verdict was for $3,000, and judg-
ment was rendered upon it, and a motion for a new trial
overruled. The plaintiff was a married man living with
his wife and daughter in a little hotel in the village of
Orchard, in Antelope county. His business was conduct-
ing this hotel. He did it by serving meals and lodging
to his customers and to the public in the ordinary course
of hotel business. The defendants are charged with con-
spiring together to destroy the plaintiff's business as a
hotel keeper by charging that his hotel was a house of ill
fame resorted to for purposes of prostitution. The de-
fendant Thornton, Jr., was a banker; Lindquist and Gold-
smith were merchants; Fletcher was a lumber dealer; and
Hicks was engaged in the livery business. Thornton was
chairman of the village board; Lindquist, Goldsmith, and
Fletcher, and one Archie D. Joyce, who is not a party to
the case, were members of the village board. Hicks was
the village marshal. It is charged that they made a wicked
contrivance, being in substance as follows: "Mr. Deu-

pree: Notice is hereby given that we, the undersigned town board and citizens of Orchard, have absolute evidence that you are keeping a house of ill fame, and that you are hereby notified to leave town in ten days." . This was signed by Lindquist, Thornton, Goldsmith, Archie D. Joyce and John Thomas Fletcher. It is claimed that the defendants induced the plaintiff's customers to leave the hotel. There is testimony in the record tending to show that Hicks would meet commercial travelers and others who were on their way to the hotel, and that he would inform them that the hotel was a house of prostitution, and in this manner he would prevent people from going to the hotel, The evidence tends to show that the plaintiff ran the hotel from October, 1907, to October, 1909; that during October, November and December of 1907 the plaintiff made about $500 a month profit by reason of his hotel business. Toward the latter part of the two years he was unable to make expenses, and finally had to quit, and became a carpenter in another village.

The plaintiff testified that the defendant Fletcher told him that a petition was being circulated against the hotel; that there was a notice directed to the plaintiff telling him that the town board and citizens of the village of Orchard had absolute proof that he was keeping a house of ill fame, and that the notice directed the plaintiff to quit town within ten days, and that the same was signed by the defendants. This appears to have been in June, 1908. Lindquist told him that he had signed the petition, and that it was in circulation, and Goldsmith told him that he had signed the petition and of circulating the same, and said that the town board and other citizens had signed the petition. There is testimony tending to show that Hicks would meet the trains when they came in, and would tell the traveling men that the plaintiff's house was not a decent house, that it was not a fit place for a man to stop, and that nobody stopped there. He also characterized the house as a house of prostitution, using a defamatory and vulgar term in characterizing it. Alonzo Andrews testified that Hicks presented the petition to him in the bar-.

ber shop, and told him that the plaintiff was running a house of ill fame. Andrews saw a number of names on the paper. The defendant Goldsmith admitted that he signed the petition in May or June, 1908. Bert Johnson testified that he heard there was a petition in circulation. Tom Drayton admitted that he knew the petition was being circulated. Herman Brewster was seen by Hicks in the barber shop. Hicks wanted to know of him if he wanted that sort of a house kept in town, using a very offensive term. Thornton admitted that he signed the paper, but claimed that he did not know what it was. He said he did not remember whether it was Lindquist or Hicks or John Thomas Fletcher who brought the paper to him. Thornton testified that the defendants and others were talking about the hotel and said that Deupree should be run out of town. After that they met in Bone & Fletcher's office. Goldsmith admitted signing the paper, and Fletcher admitted it, and also admitted that he talked the matter over with the other defendants. Several witnesses testified that the hotel had a good reputation until after this petition was circulated. There was some testimony to the effect that two or more of the girls did not have a very good reputation, but the plaintiff's wife testified that she discharged them. There was some testimony tending to show that the plaintiff knew of specific cases where a disreputable woman had been brought to his house. The plaintiff denied the truth of this testimony.

In *Farley v. Peebles,* 50 Neb. 723, it is held: "A conspiracy, like other facts, may be proved by circumstantial evidence, and one means of proof is by showing overt acts of the individuals charged with conspiring. From the fact that different persons at different times by their acts pursue the same object, the jury may, in connection with other facts, infer the existence of a conspiracy to effect that object."

A person has a right, under the law, as between himself and other persons, to pursue his calling or business without interference or obstruction from others, and an in-

Deupree v. Thornton.

fringement of this right by others is an illegal act. *Van Horn v. Van Horn,* 52 N. J. Law, 284, 10 L. R. A. 184.

An agreement among the merchants of a town or village not to buy any goods of drummers who boarded at a certain hotel, the owner of which has incurred the displeasure of members of the combination, is an unlawful conspiracy, and, when put into execution to the injury of the owner of the hotel, he is entitled to recover damages. *Webb v. Drake,* 52 La. Ann. 290, 26 So. 791.

Where the gist of the action is injury done to plaintiff's business, it is proper to show the extent and character of the business and its volume, both before and after the publication of the libelous article. *Bee Publishing Co. v. World Publishing Co.,* 59 Neb. 713.

The evidence shows that Thornton, Goldsmith, Lindquist and Fletcher signed the petition and Hicks circulated it. Whatever the purpose of the defendants may have been, they seem to have succeeded in destroying the business of the plaintiff.

A mere tacit understanding between conspirators to work to a common purpose is all that is essential to a guilty, actionable combination. *Patnode v. Westenhaver,* 114 Wis. 460.

As to the extent of the damages, we will quote from the case of *Thomas v. Shea,* 90 Neb. 823: "The entire publication was a vicious assault upon plaintiff in his profession of attorney at law. It strikes at his means of livelihood. If the accusations are true, he is unfit to be county attorney or to act professionally for an honest client. Those who believe the charges will not employ him, if they want honest service. * * * In determining compensatory damages in such a case, no method of exact computation can be devised, and the amount of recovery must generally be left to the sound discretion of the jury. Having asserted on appeal that the recovery is excessive, it is incumbent on defendant to establish the error."

There is a conflict of evidence. It has been determined against the defendants. We see no error which justifies a

reversal of the judgment of the district court. The judgment is right, and it is

AFFIRMED.

MORRISSEY, C. J., not sitting.