CHARLES J. DEUPREE, APPELLEE, V. SIDNEY D. THORNTON,
JR., ET AL., APPELLANTS.*

FILED OCTOBER 16, 1915.   No. 17942.

1. **Conspiracy:** PROOF.   To sign and circulate a statement which would
be libelous if untrue, but which is in fact true, is not of itself,
and without other evidence, sufficient proof to establish a con-
spiracy, on the part of those signing it, to injure the party to whom
it relates, and if published with good motives and for justifiable
ends is not even libelous.

2. ————: EVIDENCE: SUFFICIENCY.   The evidence in this case shows
that the general reputatation of plaintiff's hotel was bad, as being
a house of assignation and prostitution, and there is no evidence
that any of the defendants, except possibly one, signed or published
any other statement concerning plaintiff or the house which he
kept.   There is no competent evidence in this record that there was
any conspiracy among these defendants to injure the plaintiff or
his business.

3. **Limitation of Actions:** LIBEL.   If one of several defendants makes
libelous statements concerning plaintiff without the knowledge or
consent of the other defendants, evidence thereof is not competent
against the other defendants, and an action against the defendant
so offending would be barred in one year by the statute of limita-
tions.

REHEARING of case reported in 97 Neb. 812.   *Judgment
of district court reversed and action dismissed.*

SEDGWICK, J.

In our former opinion (97 Neb. 812) the judgment of
the district court was affirmed.   Upon consideration, a re-
hearing was ordered, further briefs have been filed and

---

*December 3, 1915.   *Reversed and remanded.*

arguments have been heard in the case. The cause of action is stated in the petition as follows:

"That the defendants unlawfully, maliciously and wickedly intending to injure the plaintiff and to ruin the plaintiff in his business and to make it impossible for the plaintiff to get custom for his said hotel and boarding house and to earn a living for himself and family, and with the intent and purpose to coerce and to force the plaintiff against his will to quit said business and said hotel and boarding house and to leave the said village of Orchard, in violation and in disregard to the laws of the state of Nebraska, and with intent to injure plaintiff in his good name and character as a good moral citizen, and in his good name as a business man and keeper of his said hotel and boarding house, did falsely and maliciously publish of and concerning the plaintiff, and of and concerning his said hotel and boarding house, and caused it to be believed, that the plaintiff was guilty of keeping a house of ill fame, and that he (the plaintiff) was using his said hotel and boarding house for and as a house of ill fame resorted to for the purpose of prostitution, and did, on or about the 6th day of January, 1908, unlawfully, maliciously, wickedly and secretly combine, confederate and conspire together, and that they did then and there wickedly design, construct and compose, and did unlawfully and wickedly abet counsel and assist each other in designing, constructing and composing of a certain wicked contrivance in writing, in substance following, to wit: 'Mr. Deupree: Notice is hereby given that we, the undersigned town board and citizens of Orchard, have absolute evidence that you are keeping a house of ill fame, and that you are hereby notified to leave town in ten days'—and signed by Nels Lindquist, Sidney D. Thornton, Jr., Ora J. Goldsmith, Archie D. Joyce, John Thomas Fletcher. That the defendants, in pursuance of the aforesaid agreement and conspiracy, did, on or about the 6th day of January, 1908, publish and cause to be published of and concerning his said hotel and boarding house said wicked, false and libelous contrivance in writing, and caused the same to be circulated through the village of

Orchard, and among the good people of said village of Or-
chard and surrounding country; and continued to publish
and circulate said wicked, false and libelous contrivance,
and continued to cause the same to be believed of and con-
cerning the plaintiff and his said hotel and boarding house,
until plaintiff was forced, against his will, by reason of
said publication, to quit said hotel and boarding-house
business on or about the 16th day of October, 1909, and to
quit the town of Orchard on or about the 18th day of Octo-
ber, 1909."

The evidence establishes that, for several months during
the latter part of the year 1907, the plaintiff was keeping
a hotel and boarding house in the village of Orchard, a
town of about 500 inhabitants, and that the general repu-
tation of his house in that village was bad. The defendants
produced nine or ten witnesses who so testified. Some of
these witnesses showed but little knowledge in the matter,
and their evidence was indefinite and unsatisfactory, but
many of them appear to be responsible citizens of the vil-
lage who knew the general reputation of the hotel, and
their evidence is clear and satisfactory. The plaintiff pro-
duced in rebuttal four witnesses. Mr. Ryan testified that
he was a carpenter by trade and worked in the village. He
was asked: "Mr. Ryan, did you ever hear anything against
that hotel or the girls in that hotel prior to the time you
heard of this petition being circulated?" He answered:
"No, sir; I didn't." Mr. Andrews testified that he lived
in the village in 1907 and in 1908. He was asked: "Did
you ever hear anything derogatory to Mr. Deupree or the
reputation of the house or girls that were there prior to the
time these men presented the petition up there charging
the hotel with immorality? A. No, sir; I never heard any-
thing." Upon cross-examination he said: "To tell the
truth I never heard very much talk since, as far as that
goes. Q. You were living there in the town? A. Yes,
sir; I don't hear much of what these people do; I don't
know what the reason is I don't." Mr. Howard testified
that he had lived in Orchard for a number of years. He
was questioned about a particular girl who had worked in

the hotel, and was then asked: "There was nothing about that girl's reputation before this talk about the hotel? A. I don't know. Q. There was nothing about the other girls' reputation before the talk and this petition was circulated up there? A. No, sir; I don't know." On cross-examination he testified that he was not in town during the fall of 1907. Mr. Hagerman had lived in Orchard about eight years. He was asked: "Did you ever hear anything about this hotel—about its reputation—prior to the time you heard of this petition being circulated? A. No, sir." On cross-examination he was asked: "Was there any talk about any of the girls around there? A. I don't remember whether I heard any or not." None of these witnesses testified that he knew the general reputation of the house.

When we consider that this evidence was given more than four years after the transaction in question, and also the leading character and indefiniteness of the questions, it can hardly be said to have any probative force. The whole evidence establishes beyond any reasonable doubt that the general reputation of the plaintiff's hotel in that community for several months in the latter part of the year 1907 was bad, as being a house of prostitution and assignation. Three of these defendants were members of the board of trustees of the village. Mr. Thornton was clerk of the board, and not a member of the board, as supposed in our former opinion. The defendant Hicks was not the marshal of the village, as suggested in our former opinion, and was "runner" for a competing hotel. It is clear from this evidence that these defendants and a large number of citizens of the village signed a paper of some kind, but it is wholly uncertain as to what were the contents of this paper. The plaintiff in his petition alleged that the "substance" of this paper was: "Mr. Deupree: Notice is hereby given that we, the undersigned town board and citizens of Orchard, have absolute evidence that you are keeping a house of ill fame, and that you are hereby notified to leave town in ten days." This was alleged by the plaintiff, and, as the instructions show, was

also considered by the court as indicating that the purpose and object of the petition was to drive plaintiff from the town and ruin his business. There is no evidence in the record as to the contents of this paper except the evidence of the plaintiff himself. He testifies that he never saw the paper, and testifies only to what he claims some of the defendants told him was the substance of the paper. Even as to what he was told was the substance of the paper, his evidence is very indefinite and unsatisfactory. He testified that he had a conversation with the defendant Fletcher some time in the following June, and was then asked the question: "Now, tell the jury what you said to Mr. Fletcher about reports that were circulated about you, and what Mr. Fletcher said about that, particularly what was said about a petition that had been circulated in Orchard. * * * Q. Did he say what was in the petition? A. That in the petition, that I was running a house of ill fame, and that the town board had got the petition out and signed it and circulated it to that effect to keep me out of business." He testified to a statement made by another member of the board: "He told me the same as Mr. Fletcher, that the town board had been misinformed that I was running that kind of a house, and they got up the petition that I was running a house of ill fame, and they signed it and circulated it to that effect thinking it was so." These defendants positively denied ever having made any such statements to the defendant; but, if the evidence of the plaintiff as to these statements is to be believed and considered competent, it comes far short of proving that the paper signed by these defendants contained any demand that the plaintiff should leave town. It stated, according to the plaintiff's final version of the matter, that the plaintiff "was running a house of ill fame," and the evidence establishes, as before observed, that this was the general reputation of the house, which is, at least *prima facie,* evidence that the statement contained in the paper was true. To sign, and even to circulate, a statement which would be libelous if untrue, but which is in fact true, cannot of itself be evidence of conspiracy.

The whole evidence, taken together, is consistent with the purpose on the part of these officers to do away with a bawdy house in their village, rather than to injure the plaintiff. If so, the paper was signed by them "with good motives, and for justifiable ends." Const., art. I, sec. 5.

There is evidence in the record that the defendant Hicks attempted to divert customers from the plaintiff's house in favor of the house by which he was employed, and that upon divers occasions he used extravagant language in explaining what he considered was the reputation of the plaintiff's house; but there is no evidence that any other of these defendants was in any way responsible for Mr. Hicks' conduct, and, if he made himself liable for slander, any action for damages caused thereby was barred long before this action was begun. Upon re-examination of the record and further consideration, we are satisfied that the evidence wholly fails to support any cause of action against these defendants. Even if a cause of action had existed, it would be barred by the statute of limitations. It does not appear that any further or different evidence can be furnished.

The judgment of the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

LETTON, J., concurring.

I concur in the conclusion. I think the evidence is sufficient to show a concert of action and conspiracy by the members of the town board, but that it fails to show any action by them or either of them within four years, or that the wrongful acts of Hicks committed within four years took place with their knowledge or by their consent, procurement, or approval.

HAMER, J., dissenting.

I am not quite able to agree with the majority opinion. In the eighth paragraph of the petition it is said that prior to the publication of the false charges the traveling public stopping over at Orchard, as also the transient custom, neglected to patronize plaintiff's hotel and were induced to

do so by the defendants. In the 9th paragraph it is set forth that by reason of the false statements made by the defendants and their false charges and false publications the plaintiff sustained the damages which he claims. The answer sets up the statute of limitations as a bar to bringing the action. I am not ready to agree that the statute is a sufficient bar when the answer admits that the acts were done and alleges a justification which it seeks to establish. The bar of the statute is taken away when the defendants admit that they did the acts complained of. They say thereby that they will not avail themselves of the bar of the statute which might be used to prevent an inquiry concerning the facts. They present an issue demanding a trial of the facts. When they do that they abandon the protection of the statute which would prevent such an inquiry. They allege that the plaintiff kept the hotel in a filthy and unclean condition, and that during a greater part of the time loose and immoral women whose reputations were bad were connected with the hotel and worked in it, and that during part of the time men whose reputations were bad patronized the establishment, and that the reputation of the hotel was bad long before the month of January, 1908; that the reputation of the hotel injuriously affected its business and kept business away; that acts of immorality were committed within the hotel with the knowledge, consent and connivance of the plaintiff. The foregoing alleges a stout justification upon the part of the defendants of what they were charged with doing. When the defendants set up the statute of limitations as a bar to plaintiff's action they present a barrier, but when they allege the truth of the charges made against them in the plaintiff's petition and justify them they throw away this barrier and invite the plaintiff to combat upon the facts. In substance defendants said in their answer that the plaintiff kept an immoral house filled with immoral men and with women who were prostitutes and engaged in the practice of prostitution, and that the building was lacking in cleanliness and that the food was dirty and ill prepared. They said that the plaintiff destroyed his business

Deupree v. Thornton.

by this misconduct and neglect. They presented this issue to the court and jury. They asked to try it and they were permitted to do so. The jury returned a verdict against them and the court gave the plaintiff judgment upon it. Having invited this contest and having lost it they now seek to avail themselves of the benefit of the statute, notwithstanding their abandonment of its protection. The defendants were not obliged to rest their defense upon this statute. They could have made any other defense they saw fit to make. Having rested their defense upon a justification of the offensive charges against the plaintiff, which they say they made, they will be deemed to have abandoned their plea that the statute protects them. If they had not made that plea, but had sought to justify their charges against the plaintiff by alleging that they were true, and a verdict had been rendered against them, supported by sufficient evidence, then the same would stand, although the statute of limitations might have been successfully pleaded.

The litigant must confine his journey to the road on which he invites the court and his adversary to travel with him. One who tenders an instruction which is given by the court and which assumes the existence of evidence to establish an issuable fact cannot afterwards be heard to say that there is no evidence in the case which tends to prove such fact. *American Fire Ins. Co. v. Landfare,* 56 Neb. 482. In that case the defendant requested the court to submit a question of fact. He was not allowed afterwards to say that there was no evidence upon which to submit it. This rule is based upon the idea that when a party by his language or conduct in the trial induces the court to take a certain action he cannot afterwards in the same case say that there was no foundation for such action. *Sorensen v. Sorensen,* 68 Neb. 509.

In *Missouri P. R. Co. v. Fox,* 60 Neb. 531, it is said in the syllabus: "It is a sound and salutary principle that a party cannot be heard to complain of an error which he himself has been instrumental in bringing about." The application of this principle to the case at bar would leave

the judgment for the plaintiff standing. Along the same line it is stated, in substance, in the syllabus in *Chicago, R. I. & P. R. Co. v. Kerr,* 74 Neb. 1, where from the nature of the answer and the testimony adduced it appears that both parties have placed the same construction on the petition, the supreme court will not ignore such construction in ruling on the sufficiency of the petition, even though the petition, standing alone, might not admit of such construction.

An examination of the record shows that the defendant, Hicks, talked against the plaintiff's hotel. He seems to have spoken to a lady in the presence of the plaintiff's 13 year old daughter. He told the lady to go to the Cottage house, that the plaintiff's house was not a decent place to stop at. This testimony was stricken out and therefore was not properly before the jury but it tends to show the disposition of Hicks. He seems on other occasions to have been violent in his description of the house. He used language to indicate that it was kept for purposes of prostitution. It seems that Hicks would go to traveling men and tell them not to go to the plaintiff's hotel. This was within the four years allowed by the statute. If the testimony shows that Hicks and the other defendants conspired together in what they said and did then the other defendants are liable with Hicks because of the fact that what Hicks did was only a continuation of the plan in which they all co-operated.

In view of what I understand the facts to be and the law as it should be declared applicable to them, I am unable to vote for the majority opinion.