STANDARD SAVINGS & LOAN ASSOCIATION v. LOUIS FITTS ET UX.

No. 5716. Decided April 15, 1931.
(39 S. W., 2d Series, 25.)

*Clark, Harrell & Clark, T. D. Starnes* and *Starnes, James, Clower & Gibson,* for appellant.

*Huffar & Ragsdale,* for appellees.

Mr. Commissioner LEDDY delivered the opinion of the court.

This was an action of trespass to try title instituted by plaintiff in error, Standard Savings & Loan Association, against defendants in error, Louis Fitts and wife, Emma Fitts, in which it sought to recover the title and possession to a house and lot situated in the city of Greenville, Texas.

Upon a trial before the court, without the intervention of a jury, judgment was rendered denying plaintiff in error the recovery sought and a trustee's deed under which plaintiff in error claimed title to the property was cancelled.

The trial court filed findings of fact, which are not challenged by either party. It appears therefrom that defendants in error, Louis Fitts and wife, Emma Fitts, on April 14, 1922, owned the property in controversy, which they used and occupied as a homestead. It seems that Fitts was desirous of raising some money for the purpose of discharging a note owing by him to Brooks and Neville. Brooks informed Fitts that no loan could be procured against this property because of its homestead character, but that if he and his wife would deed the property to him (Brooks) and take his note for $1,000, he would use the note as a basis for procuring a loan and when such loan was secured he would reconvey the property to them. This scheme was carried out and plaintiff in error purchased, before maturity and for value, the $1,000 note thereby created. It is conceded that it was an innocent purchaser of the note without notice of the simulated character of the conveyance from Fitts to Brooks unless the knowledge of its agent, Holmes, acquired in the transaction in which it was created, should be imputed to it.

Plaintiff in error's agent's connection with the transaction is fully revealed by the fifth paragraph of the court's findings of fact, which is as follows:

"That A. R. Holmes, was the agent of the Standard Savings & Loan Association, at Greenville, to the extent of soliciting loans and submitting applications for same to the company for approval, but was without authority to close loans until the board of directors of the company had approved the application: That Holmes, the agent of the company, knew that the conveyance to Brooks, by Fitts and wife was simulated and was made for the fraudulent purpose of creating an apparent lien and procuring thereon a loan against the homestead; and that he withheld such

knowledge from his principal, the plaintiff, Standard Savings & Loan Association, and against its positive instruction not to take or submit an application for a loan where there was a suspicion of homestead evasion: That prior to the execution of the deed by Fitts and wife to Brooks, he (Holmes) explained to the defendant, Emma Fitts, that the purpose of executing the deed, was to create an apparent lien and procure thereon a loan against the homestead sufficient to pay her husband's truck note and that Brooks would reconvey the property as soon as the loan was procured."

Plaintiff in error contends that it acquired a good title to this property under the trustee's sale, which was made to secure the payment of the indebtedness held by it, because under the facts found by the trial court the knowledge of its agent as to the fictitious character of the sale of their homestead by Fitts and wife to Brooks should not be imputed to it.

The Court of Civil Appeals concluded that in the absence of a specific finding by the trial court of collusion between Fitts and wife and plaintiff in error's agent Holmes, in support of the judgment an implied finding to the contrary should be presumed. We are unable to agree with the proposition that it does not affirmatively appear from the findings of fact made by the trial court there was collusion between plaintiff in error's agent Holmes and Fitts and wife, the borrowers, in the transaction by which the loan was secured from plaintiff in error.

It is true that the trial court does not find in express terms that Holmes colluded with the borrowers in obtaining a loan upon their homestead, but the finding is made that the agent actively participated in the scheme to perpetrate a fraud upon his principal and purposely concealed the real nature of the transaction from it.

Prior to the execution of the deed by Fitts and wife to Brooks the agent Holmes, whose specific instructions were not to take or submit an application for a loan in any case where there was any suspicion of a homestead evasion, explained to Fitts' wife that the purpose of executing the deed to Brooks was merely to create an apparent lien against the homestead and procure thereon a loan sufficient in amount to pay the note her husband owed Brooks and Neville. She was assured by said agent that Brooks would reconvey the property as soon as such loan was obtained. It thus appears the agent actively aided and advised the borrowers in the fraudulent scheme to obtain a loan upon homestead property and in order to successfully consummate the same deliberately concealed the real nature of the transaction from his principal. Holmes could not have known of Brooks' intention to reconvey this property to Fritts and wife unless he had received such information from Brooks himself. He is therefore placed in the light of having assisted in bringing about the consummation of the fraudulent transaction by communicating to Fitts' wife Brooks' intention to reconvey the homestead after the loan

was procured. The conclusion is inescapable that there was secret concert of action between the agent and those interested in the fraudulent scheme to procure a loan upon the homestead. Such action is sufficient to constitute collusion. Bowen Imp. Co. v. Van Hafften, 209 Mo. App., 629, 238 S. W., 147; Deupree v. Thornton, 97 Neb., 812, 151 N. W., 305; Wills v. Central Ice Storage Co., 39 Texas Civ. App., 483, 88 S. W., 265.

"While the knowledge of an agent is ordinarily to be imputed to the principal," says Ruling Case Law, vol. 21, p. 843, sec. 24, "it would appear now to be well established that there is an exception to the construction of imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating, or when the person claiming the benefit of the knowledge or notice or those whom he represents collude with the agent to cheat or defraud the principal."

In Scripture et al. v. Scottish-Am. Mortg. Co., 20 Texas Civ. App., 153, 49 S. W., 644, 646, Chief Justice Finley, in a case involving similar conduct of a loan agent, announces the doctrine that the principal would not be charged with the agent's secret knowledge. In passing on this question this distinguished jurist said:

"Again, if the agent did know that the property was homestead, and, against the positive instructions of his principal, made the loans, on concealing his knowledge from the principal, in collusion with the borrower, the effect of such conduct would be a fraud upon the principal, and the principal would not be charged with his secret knowledge."

The rule is otherwise where the agent has been clothed by his company with authority to actually consummate the loan. Under such circumstances notice to him of the fictitious character of a conveyance would be notice to the company, for the obvious reason that in such case he would be its *alter ego.*

In this case no such authority was given the agent. His duty was merely to solicit for and submit applications for loans to his company, which were required to be approved by the board of directors. He had nothing to do with the determination of the question as to whether the company would complete the loan. He was acting under orders not to take or submit an application for a loan where there was a suspicion of homestead evasion. In complete disregard of this positive instruction he actively participated with the borrowers in their fraudulent scheme to deceive the plaintiff in error by making it appear that a mere simulated conveyance of the homestead was a bona fide one, when he is bound to have known the whole transaction was designed for the fraudulent purpose of misleading and deceiving his principal.

The trial court's findings as to the conduct of the parties in connection with the making of this loan compels the conclusion that there was such collusion between plaintiff in error's agent and the borrowers in an attempt to perpetrate a fraud upon plaintiff in error that the secret knowledge of the real nature of the transaction possessed by the agent should not, in all good conscience, be imputed to the principal. This salutary rule has been uniformly applied by the courts of this state, as well as those of other jurisdictions. Association v. Parham, 80 Texas, 518, 16 S. W., 316; Pickett v. Dallas Trust & Savings Assoc. (Texas Com. App.), 24 S. W. (2d) 354; Scripture v. Scottish American Mortg. Co., 20 Texas Civ. App., 153, 49 S. W., 644 (writ ref.); Cooper et al. v. Ford, 29 Texas Civ. App., 253, 69 S. W., 487 (writ ref.); Holmes v. Uvalde Nat. Bank (Texas Civ. App.), 222 S. W., 642; T. & P. Coal & Oil Co. v. Belcher (Texas Civ. App.), 265 S. W., 1081; Frenkel v. Hudson, 82 Ala., 158, 2 So., 758, 60 Am. Rep., 736; Wickersham v. Chicago Zinc Co., 18 Kan., 481, 26 Am. Rep., 784; Allen v. South Boston R. Co., 150 Mass., 200, 22 N. E., 917, 15 A. S. R., 185, and note, 5 L. R. A., 716; Reisan v. Mott, 42 Minn., 49, 43 N. W., 691, 18 A. S. R., 489; Brookhouse v. Union Pub. Co., 73 N. H., 368, 62 Atl., 219, 111 A. S. R., 623, 6 Ann. Cas., 675, 2 L. R. A. (N. S.) 993; note Critten v. Chemical Nat. Bank, 171 N. Y., 219, 63 N. E, 969, 57 L. R. A., 529; Gunster v. Scranton Illuminating etc. Co., 181 Pa. St., 327, 37 Atl., 550, 59 A. S. R., 650; note, 21 Eng. Rul. Cas., 845.

The judgments of the trial court and the Court of Civil Appeals are reversed and judgment is here rendered for plaintiff in error.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.