**SOUTHERN FARM BUREAU CASUAL-
TY INSURANCE COMPANY,
Appellant,**

**v.**

**Mrs. Cecil Harvey (Betty) ALLEN,
A Feme Sole, et al., Appellees.**

**No. 23824.**

United States Court of Appeals
Fifth Circuit.

Dec. 18, 1967.

Max C. Addison, Lubbock, Tex., for appellant.

Robert L. Templeton, Amarillo, Tex., E. H. Boedeker, Charles E. Benson, Lubbock, Tex., for appellees.

Before RIVES, WISDOM and GOLD-BERG, Circuit Judges.

WISDOM, Circuit Judge:

Southern Farm Bureau Casualty Insurance Company (Southern Farm) brings this diversity suit for a declaratory judgment that an automobile liability insurance policy it had issued to George Jezisek covering a 1960 model Chevrolet was void and that Southern Farm was relieved of all liability in connection with that policy.

In October 1963 Joe Jezisek, a minor having a record of one previous accident and two "moving" violations, traded his 1957 Pontiac for a 1960 Chevrolet. The insurance on the Pontiac, issued by Southern Farm in his father's name, had expired. The bank holding the mortgage on the Chevrolet required that the automobile be insured. Joe applied to Southern Farm for coverage through a secretary at the Jack Wattenbarger Agency in Lamb County, Texas, an agency that had handled some insurance matters for Joe's brother George E. Jezisek, who lived in Milam County. The Lamb County office forwarded the application to the Southern Farm home office in Waco. After an investigation of the applicant, Southern Farm rejected Joe's application for insurance and returned his premium.

Both Joe and George Jezisek testified that on November 8, 1963, they spoke to Mr. Wattenbarger who suggested (or approved their suggestion) that they put title to the car in George's name for insurance purposes. This they did that same day. Wattenbarger, however, denied that the conversation ever took place.

Later in the day, the brothers returned to the agency office and applied for insurance in George's name through one of the secretaries in the office. A registration receipt, shown to the secretary at the time she took the application, revealed that title was transferred on that day "for insurance purposes". The application showed that the car would be kept in Spade, Texas, although George lived in Milam County, several hundred miles away. The Jeziseks did not divulge that Joe would be driving the car.

The secretary forwarded the policy to Milam, where George resided. The Milam County agent, who was not aware of the transfer of title, signed the policy and sent it to the Waco office. Since George Jezisek was already an approved insured, the main office, without further investigation, issued the liability policy to George Jezisek as owner of the Chevrolet. George received the policy and delivered it to Joe, who made all premium payments. Three months later Joe Jezisek, while driving his Chevrolet, was in an accident that resulted in fatal injuries to Cecil H. Allen.

Upon investigating the ownership of the automobile involved in the accident and finding that Joe Jezisek was its exclusive owner and driver, Southern Farm notified all interested parties that the policy was void ab initio and tendered to George Jezisek the amount of the paid premiums.

The trial court rendered judgment against Southern Farm in favor of the Jeziseks and the deceased's widow and

children on the finding that Jack Wattenbarger, Southern Farm's agent, was aware of "the expedients which ensued in quest of the insurance needed by Joe C. Jezisek." The court held that this knowledge was imputed to Southern Farm. Southern Farm therefore was estopped from voiding the liability policy, and the declaratory judgment was denied. We reverse.

## I.

The first issue on appeal concerns the district court's finding of fact: "The plaintiff's agent, Wattenbarger, was in close touch by taking part and being aware of the expedients which ensued in quest of the proper insurance needed by Joe C. Jezisek to make his required compliance with law."

Southern Farm points out that Wattenbarger would receive no commission on the policy issued to George. Also, Wattenbarger testified that he did not meet with the Jeziseks on the day the application for insurance in George's name was sent in; in fact, he emphatically denied that he ever met George Jezisek until after the accident in February 1964. By the same token, both Jeziseks were positive about having discussed the transfer of title with Agent Wattenbarger before making application later that day. Thus, despite Wattenbarger's own testimony, there is evidence in the record that would support the court's finding of fact. Accordingly, we consider that this finding is not clearly erroneous.

It is undisputed that Wattenbarger did not actually transmit to Southern Farm any suggestion of the misrepresentation involved in the application, of which he was held to have had actual knowledge. Southern Farm, therefore, had no direct notice of them. The primary issue, then, is whether the knowledge of Wattenbarger is imputed to Southern Farm to estop it from voiding the policy on the basis of the misrepresentations in the application. The district court answered this issue in the affirmative; we do not.

## II.

We turn now to Texas law to ascertain the principles governing imputation of knowledge of an insurance agent to his principal, the insurance company. For if the agent's knowledge of the falseness of a statement of a material fact in the application of insurance [1] is not imputable to the company, then under well-established authority the company may avoid liability under the policy.[2]

The general rule in insurance cases and other cases, of course, is that "notice to the agent is notice to the principal." Wagner v. Westchester Fire Ins. Co., 1899, 92 Tex. 549, 50 S.W. 569, 572; Missouri, K. & T. Ry. Co. v. Belcher, 1895, 88 Tex. 549, 32 S.W. 518, 519; Lee v. Mutual Protective Ass'n, Tex.Civ. App.1932, 47 S.W.2d 402, 406, writ dism'd, Tex.Com.App., 65 S.W.2d 271. Two conditions are necessary for the

---

1. We think it clear in this case that the misrepresentations in the application were of facts material to Southern Farm's decision to issue the liability policy. See Hamilton v. Fireman's Fund Ins. Co., Tex.Civ.App.1915, 177 S.W. 173, no writ; Kelly Contracting Co. v. State Automobile Mutual Ins. Co., Ky.1951, 240 S.W.2d 60. See also authorities cited in note 2. Joe Jezisek's application for coverage with Southern Farm in October 1963 was rejected outright by the company following investigation, and the undisputed evidence in the record is that the company would not have issued the policy here had it known that Joe was the owner and sole driver of the vehicle sought to be insured.

2. Fireman's Fund Ins. Co. v. Wilburn Boat Co., 5 Cir. 1962, 300 F.2d 631; Franklin Fire Ins. Co. v. Shadid, Tex. Com.App.1934, 68 S.W.2d 1030, jdgmt. adopted; First Texas Prudential Ins. Co. v. Pedigo, Tex.Com.App.1932, 50 S.W.2d 1091, holding approved; National Aid Life Ass'n v. Miller, Tex.Civ.App.1931, 43 S.W. 2d 623, writ dism'd; see 7 Blashfield, Automobile Law and Practice § 302.14 (3d Bd. 1966). See also Didlake v. Standard Ins. Co., 10 Cir. 1952, 195 F.2d 247, 33 A.L.R.2d 941. See generally 7 Blashfield § 303.12.

application of this rule,· however: (1) The agent must be acting within the scope of his authority and in reference to a matter over which his authority extends, e. g., United Federal Life Ins. Co. v. Cloud, Tex.Civ.App.1963, 370 S.W.2d 147, no writ; Washington Nat. Ins. Co. v. Brock, Tex.Civ.App.1933, 60 S.W.2d 861, writ ref'd; American Nat. Ins. Co. v. Park, Tex.Civ.App.1932, 55 S.W.2d 1088, writ ref'd; and (2) the insured (or applicant) must not be involved with the agent, even informally, in perpetrating a fraud against the insurer, e. g., Wichita Falls Protective Ass'n v. Lewis, Tex.Civ.App.1932, 52 S.W.2d 134, no writ; Judd v. Lubbock Mutual Aid Ass'n, Tex.Civ.App.1925, 269 S.W. 284, no writ; The Homesteaders v. Stapp, Tex.Civ.App.1918, 205 S.W. 743, writ ref'd. The Texas cases are clear that if these conditions do not exist, then the insurance company is not estopped from avoiding its policy.

■ A. If Wattenbarger had no authority to bind Southern Farm by his activity as its agent in the issuance of the policy here in issue, then any knowledge he may have obtained concerning material misrepresentations in the application could not be imputed to the company.[3] The actual scope of Wattenbarger's authority is not clear in the record. The Insurance Underwriting Supervisor of Southern Farm testified:

> In general, he has the authority to secure applications to bind this company upon the agent's signature and the applicant's signature and upon—in most cases—the receipt of premium.[4]

Wattenbarger testified that he was the "general agent" for Southern Farm in Lamb County and had the authority to "write, take the application, collect the premium and send in the application and money". It is true that Wattenbarger did not actually accept the application— that was done by his secretary who was not an agent of the insurer. See American Nat. Ins. Co. v. Bailey, Tex.Civ.App. 1927, 3 S.W.2d 539, 542, no writ. Furthermore, Wattenbarger did not sign the application—the agent in Milam County, to whom the application was forwarded by Wattenbarger's secretary, did this. Even so, Wattenbarger's knowledge of the paper title transfer was obtained in the course of his agency for the insurer, and on the *question of authority alone* we find that he had sufficient authority for that knowledge to be imputed to Southern Farm:

> The rule is well settled in this state that where, as the facts show in this case, an insurance agent with authority to solicit business, to make and forward the application for insurance, to collect and transmit premium, and to deliver the policy of insurance, notice to him of any matter affecting the risk involved, and required to be placed in the application, is notice to the insurer; and the insurer will not be permitted to deny liability on the policy on account of the neglect, failure, or fraud of the agent in not informing the insurer of such matters. Washington Nat. Ins. Co. v. Brock, Tex.Civ. App.1933, 60 S.W.2d 861, 862, and cases cited therein.

---

3. Home Ins. Co. v. Lake Dallas Gin Co., Tex.Comm.App.1936, 127 Tex. 479, 93 S. W.2d 388, opinion adopted; Gaines v. Traders & General Ins. Co., Tex.Civ.App. 1937, 99 S.W.2d 984, writ dism'd. And conversely, where the agent acts within his authority (and no fraud is being perpetrated against the insurer), knowledge of the agent will be imputed to the insurer. E. g., United Federal Life Ins. Co. v. Cloud, Tex.Civ.App.1963, 370 S.W.2d 147, no writ; Germania Mutual Aid Ass'n v. Trotti, Tex.Civ.App.1958, 318 S.W.2d 918,

no writ; Southern Underwriters v. Davis, Tex.Civ.App.1939, 129 S.W.2d 720, writ dism'd jdgmt. corr.; American Nat. Ins. Co. v. Park, Tex.Civ.App.1932, 55 S.W.2d 1088, writ ref'd; Northwestern Life Ass'n v. Findley, 1902, 29 Tex.Civ.App. 494, 68 S.W. 695, writ ref'd.

4. It may be noted that on the question of actual authority, rather than apparent authority, Wattenbarger did not have authority to insure an applicant who had already been rejected by the company.

■ B. "The authorities are uniform to the effect that a principal is not affected by notice to an agent who is acting adversely to the interests of his principal, and either for his own benefit or for the benefit of a third party." First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App.1932, 48 S.W.2d 651, 654 writ dism'd, and cases cited therein. This rule has been consistently followed in Texas since 1891,[5] where it was fully expounded by the Supreme Court in Centennial Mutual Life Ass'n v. Parham, 1891, 80 Tex. 518, 16 S.W. 316, 319:

> Plaintiff had alleged collusion between Weatherby and the assured and her husband to obtain the policy on false representations * * *. It is ordinarily true that a principal is affected with notice of such facts as come to the knowledge of his agent in the course of his business. When an agent, however, ceases to act for his principal in good faith and through collusion with another, desiring through him to cheat and defraud the principal, practically enters into the service of that other for the purpose of promoting the interest of that person, or the common interest of himself and that other, in fraud of his principal, then the person who so avails himself of the services of such an agent cannot claim that his act or his knowledge in reference to matters to which the fraudulent collusion relates are binding on the person intended to be defrauded. In such a case, the agent *pro hac vice* becomes the agent of the person he collusively serves. * * * If a person colludes with an agent to cheat the principal, the latter is not responsible for the acts or knowledge of the agent. The rule which charges the principal with what the agent knows is for the protection of innocent third persons, and not those who use the agent, to further their own frauds upon the principal.[6]

■ The defendants in the trial below argued, and the trial court found, that Wattenbarger actively participated in the scheme whereby paper title to the Chevrolet was transferred to George Jezisek for insurance purposes, with the insurance policy to be listed in his name, knowing that Joe Jezisek was to be the actual owner and sole operator of the vehicle.[7] In the least, Wattenbarger is "placed in the light of having assisted in bringing about the consummation of the fraudulent transaction * * *. Such action is sufficient to constitute

---

5. See Standard Savings & Loan Ass'n v. Fitts, 1931, 120 Tex. 303, 39 S.W.2d 25; First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App.1932, 48 S.W.2d 651, writ dism'd; Judd v. Lubbock Mutual Aid Ass'n, Tex.Civ.App.1925, 269 S.W. 284, no writ; The Homesteaders v. Stapp, Tex.Civ.App.1918, 205 S.W. 743, writ ref'd; Sovereign Camp Woodmen of the World v. Lillard, Tex.Civ.App.1914, 174 S.W. 619, writ ref'd. See also Standard Savings & Loan Ass'n v. Fitts, 1931, 120 Tex. 303, 39 S.W.2d 25; Teagarden v. R. B. Godley Lumber Co., 1913, 105 Tex. 616, 154 S.W. 973; Zeigler v. Federal Land Bank, Tex.Civ.App.1935, 86 S.W.2d 864, writ dism'd; Wichita Falls Protective Ass'n v. Lewis, Tex.Civ.App. 1932, 52 S.W.2d 134, no writ; Aetna Ins. Co. v. Richey, Tex.Civ.App.1918, 206 S.W. 383, no writ.

6. "The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal." Mutual Life Ins. Co. v. Hilton-Green, 1916, 241 U.S. 613, 623, 36 S.Ct. 676, 680, 60 L.Ed. 1202, 1211; see Ohio Millers' Mutual Ins. Co. v. Artesia State Bank, 5 Cir. 1930, 39 F.2d 400, 402; 3 C.J.S. Agency § 262, at 196 (1936).

7. In fact, some of the testimony of George and Joe Jezisek suggests that the scheme was originally suggested by Wattenbarger. It is clear, however, that the Jeziseks were not merely innocent parties sucked into the scheme by a slick insurance agent.

collusion," Standard Savings & Loan Ass'n v. Fitts, 1931, 120 Tex. 303, 39 S. W.2d 25, 26, and "the principal would not be charged with his secret knowledge", First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App.1932, 48 S.W.2d 651, 654. We therefore find Southern Farm not estopped to avoid the policy on account of its agent's knowledge. The Homesteaders v. Stapp, Tex.Civ.App.1918, 205 S.W. 743, writ ref'd.[8]

### III.

All the parties on appeal devote lengthy discussion in their briefs to our decision in General Ins. Co. v. Western Fire & Cas. Co., 5 Cir. 1956, 241 F.2d 289. That case involved a dispute between two insurance companies concerning liability coverage of a minor, Sherman Jones. The agent for Western Fire and Casualty Company had written a policy covering Jones and his mother, but had listed sole ownership of the covered vehicle in Mrs. Jones. Western sought to avoid the policy on the ground that "the car 'really' belonged to the boy so that there was a breach of the representation of ownership." 241 F.2d at 292. Judge Brown, for the Court, applying Texas law, held that the knowledge of Western's agent of the true state of ownership of the car was imputed to Western, and thus it could not void the policy on the basis of any material misrepresentation.

*General* contains extended reference to the authority of Western's agent to bind the company. But since we have found this not to be a key issue in this case, we need not enumerate distinctions on this ground.[9] In *General,* however, the insured was in no way responsible for the misrepresentation:

> For nowhere is there a suggestion that mother or son were knowingly misstating, or attempting to conceal, facts * * *. [They] were attempting fully to state all of the facts, furnish all of the information and answer all of the questions. * * * [T]hey gave Agent Hutson the full facts concerning the nature of Sherman's ownership and interest in the car. 241 F.2d at 292–293.

Thus there could be no collusion between the insured and the agent in fraud against the insurer[10] which would prevent the knowledge of the agent from being imputed to his principal. *General* is therefore inapplicable to the instant case.

\* \* \*

■ Whenever, as here, the party contending for the validity of a policy has himself participated in perpetrating the fraud pursuant to which the policy was issued, Texas courts have consistently denied recovery. If he cannot prove that the insurer's agent knew of the scheme—or knew of the false representations—then he cannot show that the insurer has sufficient knowledge to estop it from voiding the policy. If he does prove complicity of the agent in the scheme and knowledge of the misrepresentations, he has proved too much: The agent then becomes involved in collusion against his principal and knowledge of the agent will not be imputed to his principle. We hold that the latter situation existed in this case.

---

8. See cases cited in note 5, supra; 16 Appleman, Insurance Law and Practice § 9102 (1944); 32 Tex.Jur.2d, Insurance §§ 145, 237 (1962).

9. We note in passing, however, that while Western's agent was found to have had actual authority to write the policy on a minor, Wattenbarger did not have actual authority to write the policy on a previously rejected applicant. Wattenbarger's apparent authority does seem to have been as extensive as that of Western's agent.

10. In fact, the Court in *General* observed that "Agent Hutson thought he was doing what he was permitted to do." 241 F.2d at 294. No such argument has been or could be made in the present case.

We reverse the judgment of the district court and render judgment for the plaintiff in this action, declaring Southern Farm not liable on the policy issued on the 1960 Chevrolet in the name of George Jezisek.