## HUMPHREYS et ux. v. STANDARD SAVINGS & LOAN ASS'N.

### No. 9501.

Court of Civil Appeals of Texas. San Antonio.

Feb. 13, 1935.

Rehearing Denied March 13, 1935.

R. M. Bounds and J. G. Grissom, both of McAllen, for appellants.

R. L. Lester and J. M. Mothershead, both of Harlingen, for appellee.

BICKETT, Chief Justice.

L. E. Humphreys and wife, Grace Humphreys, plaintiffs below, have appealed from a judgment in favor of Standard Savings & Loan Association, defendant below, the effect of which judgment is to sustain the validity of a deed and a vendor's lien therein reserved, as against the contention of the Humphreys that the transaction was a simulated sale and an attempt to mortgage their homestead in violation of article 16, § 50, of the Constitution of Texas.

The original transaction finally culminated in the enforcement of the lien, subsequently extended, and the sale of the property to appellee. Humphreys and wife conveyed the property here involved to A. J. Kautsch by general warranty deed, which was dated June 14, 1929, and which reserved a vendor's lien to secure the payment of a described pur-

chase-money note. Kautsch executed this note for the principal sum of $8,000, bearing the same date, payable to L. E. Humphreys, and reciting, among other things, the reservation of the vendor's lien to secure the payment thereof. The note, bearing an indorsement of a credit of $3,000 as of July 6, 1929, was transferred, together with the vendor's lien, both by an indorsement and by a separate written assignment of the same date to Standard Savings & Loan Association. The indorsement of the credit recites that it is represented by the execution and delivery of a renewal note for $3,000. The indorsed assignment contains a recognition of liability as indorser and an express guaranty of payment by Humphreys. Kautsch, joined by his wife, executed a renewal note for the principal sum of $5,000, payable to Standard Savings & Loan Association, and also a deed of trust to secure the payment thereof, both dated July 6, 1929. The deed of trust subrogated Standard Savings & Loan Association to the vendor's lien. Upon default in the payment of the renewal note, a substitute trustee, under the power provided in the deed of trust, sold and conveyed the property to Standard Savings & Loan Association, as shown by deed dated July 25, 1932.

The loan, sought by the written application of Kautsch, dated June 18, 1929, was consummated on July 8, 1929. The application, sworn to by Kautsch and wife, stated that the property had been purchased from Humphreys and that the loan was desired for the purpose of paying the vendor's lien note for $8,000. The application also shows that Kautsch was to pay the agent who took it a commission for his services in obtaining the loan. On July 6, 1929, Humphreys and wife executed and swore to a designation of homestead, designating certain described property, other than that involved in this suit, as their homestead, and reciting that the described property "is now occupied, held, and used by us as our homestead and that our homestead claim does not embrace any other lands or properties." And on the same date, Humphreys and wife executed a more detailed affidavit which, in substance, stated: That they were the grantors in the deed to Kautsch; that it was their understanding at the time of the sale that Kautsch would refinance as much as possible of the $8,000 note and that they would subordinate the balance of the debt and the lien securing payment thereof to a lien in favor of a loan company securing payment of whatever the loan company might advance; that, "this was a bona fide sale"; that Mrs. Humphreys properly executed and acknowledged the deed, stating the facts in detail; that they removed from the property on that date and permanently abandoned it as their homestead and moved into and took up their homestead in an apartment house owned by them, which was particularly described and which was the same property mentioned in the formal homestead designation; and that they made the statements for the purpose of inducing Standard Savings & Loan Association to take up and renew $5,000 of the $8,000 note executed by Kautsch and secured by the vendor's lien and for the further purpose of inducing New York Title & Mortgage Company to insure the title to the property for the benefit of Standard Savings & Loan Association. Kautsch also signed the same affidavit, the last paragraph of which was to the effect that he stated upon his oath that he had purchased the property from Humphreys and wife, that it was a bona fide purchase, and that possession of the property had been given to him by Humphreys and wife on that date. The affidavits, the assignment, the renewal note, and the deed of trust were delivered to the attorney who examined the title for New York Title & Mortgage Company. That company, on July 8, 1929, filed the transfer and deed of trust for record, and issued to Standard Savings & Loan Association its policy of title insurance. On the same date, the title company delivered the note and title insurance policy to N. P. Barton, president of Hidalgo County Bank, and he in turn delivered to Kautsch and Humphreys the check of Standard Savings & Loan Association for $5,000, which was payable to Kautsch and the bank, and which was indorsed by Kautsch and Humphreys and cashed by them. Humphreys received the proceeds less the expense of title insurance and recording fees.

The property in question was the homestead of Humphreys.

The execution of the deed and the vendor's lien note, as between the immediate parties thereto, was not a bona fide transaction, but only a pretended one. Humphreys, being engaged in the lumber business and having had much experience with respect to loans upon real estate security, understood the nature of the homestead exemption in Texas. He, therefore, contrived the plan of conveying his homestead to Kautsch, who was his bookkeeper, and of having Kautsch execute an ostensible vendor's lien note. Kautsch paid no consideration for the conveyance, except the execution of the note for $8,000, although he swore in his application for the loan that he had paid $7,000 cash in addition to the note.

Kautsch did not have actual possession of the property at any time, although he swore in the application that it was his own homestead and in the joint affidavit with Humphreys and wife that he had possession. Kautsch acted throughout solely for the accommodation of Humphreys, with no intention upon the part of either of them that there should be an actual sale.

To show notice of the homestead character of the property and the fraudulent nature of the deed and vendor's lien note, the Humphreys rely upon the circumstances that surrounded the making of the loan. N. P. Barton was the representative of Standard Savings & Loan Association for the purpose of soliciting the application for the loan and of delivering over the check of Standard Savings & Loan Association on delivery to him of the loan papers and title insurance policy, but he had no authority to approve or make loans. Ernest M. Smith was an abstractor and manager of Valley Abstract Company, which was the representative of New York Title & Mortgage Company with authority under power of attorney to issue title insurance policies. Grade Calloway was the attorney who examined titles for the title company, and upon whose approval the abstract company issued title insurance policies. Humphreys testified to only one conversation with Barton prior to the closing of the loan; he quoted Barton as saying, subsequent to the making of the application, "I was by looking at your house. It is a fine place. I had a good notion to call you out and talk to you." Humphreys also testified that Barton, apparently after the closing of the loan suggested taking out life insurance and said: "If anything happens to you, it would be mighty nice to have the insurance company pay off the loan." Barton testified that he did not know Humphreys was living in the house and claiming it as his home, and, also, that he did not remember any such conversation about life insurance, as testified to by Humphreys. The application was taken by one of Barton's employees, A. W. McDermott, with whom Humphreys testified he negotiated the loan, but who is not shown to have received any information or to have known any facts except as stated in the application. Humphreys testified that, when the assignment, renewal note, and deed of trust were about to be executed in Calloway's office, Calloway inquired as to the terms of the renewal of the balance of $3,000 on the original note, and, on receiving the reply that it was immaterial, said the loan was not bona fide and could not be made, and, on being asked if the papers could not be ar-

ranged to make the loan, stated he would look into it and see whether the loan could be made. Humphreys also testified that, in the same conversation, Calloway said that he would inspect the place and that Humphreys would have to get his things out of the house if the loan was to be made. Calloway testified that, as Humphreys claimed to be moving out of the house, he declined to approve the title as long as Humphreys was occupying the premises. A few days later, on July 6, 1929, Humphreys, Calloway, and Smith inspected the property. According to Humphreys, there were then in the house a few pictures, some books, some clothes in closets, some cooking utensils, a gas cookstove, and an electric refrigerator. Calloway and Smith testified that at that time the house was vacant and they did not see any pictures, books, clothes, or cooking utensils there. As to the refrigerator and the stove, Calloway saw the one, but not the other; Smith saw them, but testified that Humphreys said they were sold with the house to Kautsch. Humphreys had, in fact, moved his family to an apartment house which was owned by him and which was the property stated in the formal homestead designation and in the affidavit to be his homestead. Subsequent to the inspection, Calloway went to the apartment house and there found Mrs. Humphreys, who then and there executed the designation and affidavit. Calloway and Smith testified that they did not know that the conveyance was simulated and did not know that the property conveyed was the homestead of the Humphreys at the time of the closing of the loan.

The Humphreys requested the submission of special issues as to (1) whether the transaction was a simulated one for the purpose of mortgaging the homestead; (2) whether either Barton, Calloway, or Smith was the agent of Standard Savings & Loan Association; and (3) whether either Barton, Calloway, or Smith had notice that the transaction was simulated. The district court refused to submit the requested issues, and peremptorily instructed the jury to return a verdict in favor of Standard Savings & Loan Association.

■ There is no issue raised as to notice that a conveyance and vendor's lien note were simulated and that the property remained the homestead of the grantor, where the agent of one lending money to take up and extend the indebtedness had no authority to approve or make loans, but only to solicit applications for loans and to disburse proceeds of loans upon approval of title papers by others, and where such agent did not know and was not

informed by any one that the transaction was simulated, and where the only circumstances relied on to show notice were, as testified to by the grantor, that the agent, before the closing of the loan, referred to the house as the residence of grantor, and, subsequently, advised the grantor to take out life insurance for protection against the loan. Barton's authority was restricted to soliciting applications for loans and paying over the proceeds of loans finally closed. The application was taken by an employee of Barton. Only one conversation between Humphreys and Barton is shown prior to the closing of the loan. Then, according to Humphreys, there was only a casual reference by Barton to the property as that of Humphreys. That circumstance is so slight as to be of no probative force. The subsequent advice as to life insurance protection against the loan is not necessarily referable to any knowledge on Barton's part that the property remained the homestead of Humphreys, for Humphreys, by indorsement and guaranty placed on the vendor's lien note, became personally liable for the amount of $5,000 thereof transferred to Standard Savings & Loan Association. Thus, the facts fail to show notice to Barton or bad faith on his part.

■ Notice of the homestead character of property and the simulated sale thereof will not be imputed to one lending money to take up and extend a vendor's lien note created in the sale transaction, although there was notice of the facts to the lender's agent, who had authority only to solicit the application for the loan and to deliver the lender's check upon approval of the title and loan papers by an attorney, and who received his compensation from the borrower on consummation of the loan, because the failure of the agent to reveal the facts to his principal would constitute collusion and fraud between the agent and the perpetrators of the scheme. Standard Savings & Loan Association v. Fitts, 120 Tex. 303, 39 S.W.(2d) 25, and cases therein cited; National Bond & Mortgage Corporation v. Davis (Tex. Com. App.) 60 S.W.(2d) 429; First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S. W. 651; Dallas Building & Loan Association v. Patterson (Tex. Civ. App.) 48 S.W.(2d) 657; Wood v. Eastland Building & Loan Association (Tex. Civ. App.) 75 S.W.(2d) 466.

■■ No issue as to notice of a simulated sale of a homestead is raised where an attorney, who is examining the title for the issuance of a title insurance policy to the proposed purchaser of a vendor's lien note, refuses to approve the title unless the grantor vacates the property and moves into another homestead, and where the grantor and grantee sign a joint affidavit stating that the sale was bona fide and that possession was actually delivered, and where the attorney on inspection finds the house vacant with the exception of a few articles of personalty and further finds the family of the grantor actually living in another house owned by the grantor, and where such attorney did not know and was not informed by any one that the transaction was simulated. Humphreys says that the question of occupancy was raised by Calloway when a remark of indifference was made as to the balance of the original debt not being taken up by the loan. Calloway states that he refused to go forward when he learned that the grantor, Humphreys, was still in possession. However, by the date of the inspection of the property by Calloway and Smith, Humphreys had moved all of the furniture away, with the possible exception of a few articles, and was living in an apartment house owned by him. It was then that the affidavit was made by Humphreys and wife and Kautsch. And, upon the basis of the inspection and the affidavit, the title was approved, the policy issued, and the loan closed. Calloway and Smith, occupying somewhat similar positions in the transactions, each acted in absolute good faith and with all proper prudence and caution. For that, Humphreys seeks to impute to them notice of his own fraudulent purpose to give a worthless lien on a homestead, thus arguing that the greater care on their part indicates a more complete knowledge of his secret purpose. There is not a scintilla of evidence to bear out that theory. And there was no notice under the circumstances.

■ The vendor and his wife and the vendee, having represented that the deed and vendor's lien note constituted a bona fide transaction, are estopped to assert that the transaction was simulated and that the purported vendor's lien was void on account of the property being the homestead of the vendors, as against one who, in good faith and without notice, lends money to take up and extend the vendor's lien note. First Texas Joint Stock Land Bank v. Chapman, supra; Pickett v. Dallas Trust & Savings Bank (Tex. Com. App.) 24 S.W.(2d) 354.

The trial court did not err in refusing to submit the requested issues and in giving the peremptory instruction.

The judgment is therefore affirmed.