**DAVIS MOTORS, INC., Appellant,**

v.

**Homer PEEL, D/B/A Homer Peel Motor Company, Appellee.**

No. 16298.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 9, 1962.

Spurlock, Schattman & Jacobs, and Kenneth M. Cole, Jr., Fort Worth, for appellant.

Mays & Mays, and Charles W. Lindsey, Fort Worth, for appellee.

BOYD, Justice.

Davis Motors, Inc., appeals from a take nothing judgment after a trial before the court in its suit against Homer Peel, doing business as Homer Peel Motor Company.

There is no statement of facts in the record. At appellant's request the court filed findings of fact and conclusions of law. They were:

On April 21, 1958, one Howard Dunn took a Mercury Automobile belonging to Davis Motors, Inc. from the Davis Motors lot, drove same to the place of business of

Homer Peel, took $800.00 in cash and a check made payable to Howard Dunn in the amount of $950.00 from Homer Peel, signed over the title to Homer Peel as follows: "Davis Motor Company by Howard Dunn."

The $800.00 in cash and the $950.00 represented by the check made payable to Howard Dunn and signed by Homer Peel never came into the hands of the plaintiff.

The automobile in question was sold to Davis Motor Company on April 14, 1958, by Brantley-Draughon Business College and the title was transferred by the Brantley-Draughon Business College to Davis Motor Company on April 14, 1958, all as shown by the title certificate which is in evidence. Homer Peel had been doing business with the Davis Motor Company at least since 1955.

During the period of 1955 through April 21, 1958, Homer Peel had bought over 10 cars from the Davis Motor Company. In every case the title to the automobile was signed over in the offices of the Davis Motor Company by a properly authorized person only after a draft signed by Homer Peel was delivered to the offices of the Davis Motor Company. Dunn had no actual authority to sign over titles of automobiles owned by Davis Motor Company to any individual, firm, or corporation.

Prior to April 21, 1958, Howard Dunn had never delivered a title to an automobile owned by Davis Motor Company to Homer Peel. Howard Dunn was, however, the new car sales manager at the time in question for Davis Motor Company. One of the duties of his job included selling used cars. He had the actual authority from his employer to procure purchasers for his employer's automobiles. He had the actual authority to carry the employer's automobiles away from the employer's premises to show them to prospective purchasers. The job of selling automobiles was the very thing the employer had him hired to do. He was the head man for his employer in the function of selling new automobiles. He had the actual authority to accept money paid to his employer by purchasers of their cars. The only thing that Dunn did in connection with this sale in question that he did not have the actual authority to do was to transfer the title to the car in question to Peel. He also had authority to deliver cars sold by him to the purchasers.

On the occasion in question Dunn appeared at Peel's place of business with the car in question and with the certificate of title to the car. Dunn negotiated a sale of the car to Peel for $1,750.00, $800.00 of which Peel paid by cash, and the balance of $950.00 by check made payable to Dunn. This check was made payable to Dunn at his request, after advising Peel that it would aid him in getting financing on sale of another of his employer's cars, if he could promptly cash the check and go by the finance office with the cash.

■ It was at the time of the sale of the car in question one of the customs and usages in the used car automobile business in Tarrant County, Texas, that the sales manager thereof had the actual authority to sign transfers of titles to automobiles to prospective purchasers thereof. Davis Motors, Inc., was a corporation and could only operate through its agents, Dunn was one of the top employees for this corporation. Peel was aware of this custom and usage. He also knew that Dunn was the sales manager for plaintiff and that he was one of plaintiff's top employees. He had had prior satisfactory dealings with Dunn and had no reason to distrust him any more than his employer did. Peel had no knowledge that Dunn had no actual authority to sign the title certificate for his employer.

Dunn had the apparent authority to transfer the title in question and apparent authority to do all other things he did in order to consummate the sale that he did not have actual authority to do.

■ All the facts, together with Davis Motors, Inc., putting Dunn in possession of its car and giving him the duties of sales manager for it and in putting him in a posi-

tion where he had access to its certificates of title, led Mr. Peel, who acted with ordinary care and prudence in the transaction, to justifiably believe that Dunn had the actual authority to transfer the title to the car in question to Peel and to accept the money in payment for it.

Although it was the custom and usage of automobile dealers in Tarrant County at the time in question to authorize their sales managers to deliver titles to automobiles owned by them to individuals, firms or corporations away from the premises of the said dealers, the Davis Motor Company had never done business in this fashion prior to April 21, 1958.

At the time Dunn delivered the automobile in question to Peel, he told Peel that the automobile was offered as a trade-in by a prospective customer of Davis Motors and that he, Dunn, was attempting to get the automobile financed so that he could accept it in trade on a new car. At the time Dunn made this statement, the title certificate which he gave Peel showed that the Davis Motor Company had owned the automobile in question since April 14, 1958, for a period of seven days prior to the time that Dunn told this story to Homer Peel on April 21, 1958.

In all of the previous dealings between Davis Motor Company and Peel, no cash or draft or anything else of value had ever been delivered to Davis Motors in payment for one of their automobiles by Peel at any place other than at the offices of Davis Motor Company.

In all of the prior dealings between Davis Motor Company and Homer Peel, no draft or check signed by Homer Peel had ever been made payable to any person or firm other than Davis Motor Company.

The fair market value of the Mercury automobile in question in April of 1958 was $1,750.00.

Dunn made restitution to Davis Motor Company in the amount of $700.00 subsequent to April 21, 1958.

If plaintiff is entitled to any judgment plaintiff is also entitled to interest at the rate of 6% from April 21, 1958 on said amount, less credit for payments made by Dunn to Davis Motor Company.

It was concluded that the plaintiff is not entitled to recover anything from defendant Homer Peel, but that it is entitled to the recovery awarded it in the judgment against Dunn, who defaulted.

We are of the opinion that the findings of fact warrant the conclusions of law, and that the judgment should be affirmed. In 2 Tex.Jur.2d 483, Agency, § 44, it is said:

"Where a principal places an agent in such a situation that a person of ordinary prudence, who is conversant with business usages and the nature of the particular business, would reasonably be led to believe that the agent has authority to perform acts customarily done in a business of that kind, one who deals with the agent will be justified in believing that he has such authority."

The judgment is affirmed.