UNITED FEDERAL LIFE INSURANCE
COMPANY et al., Appellants,

v.

Joe H. CLOUD, Appellee.

No. 3788.

Court of Civil Appeals of Texas.

Eastland.

July 26, 1963.

Rehearing Denied Sept. 6, 1963.

John D. Reed, Austin, Dewey Cox, Jr., Ranger, for appellants.

Bill Atkins, Arlington, for appellee.

WALTER, Justice.

Joe H. Cloud filed suit against United Federal Life Insurance Company upon a sworn account for labor performed and materials furnished for installing plumbing equipment at the Gholson Hotel in Ranger. The insurance company filed a denial under

oath and made Mrs. Gwen Roberts, their alleged agent, a party and sought judgment over against her for any judgment rendered against it.

In a non-jury trial, the court rendered judgment for Cloud for the total amount of $3,152.61 and for foreclosure of his mechanic and materialman's lien and granted the insurance company judgment over against Mrs. Roberts.

The insurance company and Mrs. Roberts have appealed. At the outset we are confronted with appellee's contention that appellants' points 1, 3 and 4 are too general to be considered. The first point is "The trial court erred in granting plaintiff judgment against defendant for labor performed and materials furnished." When we consider the statement and argument under this point it is clear that appellant is presenting a "no evidence" point. This is likewise true concerning the other general points.

When the appellant contests the trial court's judgment without requesting findings of fact or conclusions of law, we must assume that the trial court's findings were all in support of its judgment. The judgment must be affirmed if there is any evidence of probative force to support it upon any theory authorized by law. Renfro Drug Company v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; City of Abilene et al. v. Meek et al., Tex.Civ.App., 311 S.W.2d 654 (Writ Ref.).

Mrs. Gwen Roberts, one of the appellants, "adopts in its entirety the brief of appellant United Federal Life Insurance Company, filed herein without reservation."

The insurance company filed a third party complaint and asked for judgment over against Mrs. Roberts, its tenant and alleged agent. The insurance company attached a lease-option to purchase agreement it had with Mrs. Roberts as an exhibit. Cloud alleged that it was a sham agreement that the insurance company executed for the purpose of avoiding liability for improvements and repairs to its property.

The following statement of facts constitutes a summary of the evidence introduced. On February 27th, 1961, the insurance company, as owner of the Gholson Hotel at Ranger, entered into a lease-option-to-purchase contract with Mrs. Roberts. This lease was for a period of six months. Paragraph 4 provided that Mrs. Roberts would not encumber the premises or bind the owner for any purchases during the term of the lease, nor obligate the owner in any manner for labor or improvements. It further provided that all labor and improvements were to be paid by Mrs. Roberts on a cash basis. Mr. Cloud's first dealings with Mrs. Roberts, concerning the repair job on the hotel, was a letter written to Mrs. Roberts. It was a proposal to do certain work and furnish certain supplies. Mrs. Roberts informed him that it would be necessary for her to notify the insurance company concerning the work. He first installed a hot water heater and worked on the hot water system. Thereafter he was instructed by Mrs. Roberts to work on a day to day basis. Cloud's business is located in Fort Worth. Each day Mrs. Roberts would instruct the plumber on the job about the work to be done the following day and she or the plumber would call the Fort Worth office and order the materials. Cloud called Mr. Lawrence, the president of the insurance company, and asked him when he could expect payment of his bill. Lawrence told him that he thought that payment had been made, and he needed some time to check into the matter with Mr. Bohls, an officer of the company who was familiar with the work. Mr. Cloud told Lawrence that if he was not paid for his work he was contemplating taking his material out and Mr. Lawrence said "Now, Mr. Cloud, don't be hasty, let's don't do that. Give me time to check into it. We'll see that you get your money." Cloud testified that Lawrence did not deny owing the account. On the same day Mr. Lawrence called Mr. Cloud and informed him

that his company had issued a check to Joe E. Cloud and that it had been endorsed and paid by the bank. It later developed that some one forged Mr. Cloud's endorsement on the check and cashed it. The president of the insurance company was asked the following question "And, I believe you stated in your deposition that your company is holding this $821.00 and some odd cents to apply to this particular account?" and he answered, "We are holding it." In these telephone conversations Mr. Lawrence never did indicate to Mr. Cloud that Mrs. Roberts did not have authority to make the improvements.

Mrs. Cloud testified to substantially the same thing that Mr. Cloud did.

Mr. Bohls, secretary for the insurance company, testified that the hotel was turned over to him by the insurance company and that he entered into the lease agreement with Mrs. Roberts. That, subsequent to execution of the lease, he received authority from his board of directors to do additional work and pay half of the expenses up to $3,000.00. They did not specify what work was to be done or the price that was to be paid. This was left entirely to Mrs. Roberts' discretion. Mrs. Roberts called Mr. Bohls and told him they owed a plumbing bill. The insurance company wrote a check payable to Cloud for its one-half which amounted to $821.50.

Mr. Lawrence testified that Mrs. Roberts had no authority other than the original contract and that the insurance company had not given her any additional authority. He further testified that the originial lease with Mrs. Roberts had been extended and was in full force at the time of trial; that his company had issued checks in excess of $1850.00, as set out in the lease-option agreement, and that it had paid for additional repairs that were not originally contemplated by said instrument.

■ After the lease-option to purchase contract was executed, Mrs. Roberts and the insurance company entered into another agreement by the terms of which the insurance company was obligated to pay for other repairs on the hotel not contemplated in the original agreement. Under the new agreement it is not disputed that Mrs. Roberts was authorized to contract with any person, firm or corporation to do additional repair work on the hotel and the insurance company would be obligated to pay any amount up to $1,500.00 for said repairs. We are of the opinion that Mrs. Roberts had actual authority from the insurance company to bind them for any amount up to $1,500.00. Our question narrows down to the proposition of whether she had apparent authority to obligate the company for the amount of the judgment in excess of $1,500.00. The insurance company knowingly permitted Mrs. Roberts to hold herself out as their agent. The company also clothed her with the indicia of authority which would lead a prudent person to believe that she actually had authority to bind the company for the full amount of any repair bill on the hotel. Under the new agreement, Mrs. Roberts was the duly authorized agent for the insurance company and was acting within the scope of her actual and apparent authority in contracting with Cloud for the plumbing repairs. Pursuant to such actual authority, she made such contract and the insurance company issued its check to Cloud for $821.50 in payment for its share of the plumbing expenses.

■■ "An agent's authority is presumed to be coextensive with the business entrusted to his care. Moreover, such presumed or apparent authority is not diminished by private limitations placed thereon by the principal, where such limitations are known only to the principal and the agent, and are not communicated to innocent third parties dealing with the agent." 2 Tex.Jur. (2d) 490. "Accordingly, if an agent's conduct is within the scope of his apparent authority, his principal will be deemed to be bound thereby, even though the agent's conduct may violate certain private instructions given by the principal to the agent only." 2 Tex.Jur. (2d) 491.

The record does not disclose that the insurance company made any effort to notify the plaintiff of any limitation it had placed upon Mrs. Roberts' authority to expend its funds for the repair of its building. We are compelled to hold that Mrs. Roberts had implied authority to bind the insurance company for the amount of the judgment in excess of $1,500.00.

The parties agreed that $750.00 would be a reasonable attorney's fee for the work performed by the appellee's counsel. The appellant, however, did not agree that the attorney's fee would be appropriate in this case and strongly contends that Article 2226 of Texas Revised Civil Statutes Vernon's Ann.St. was not applicable to the facts in this case. The appellants' contention being that the contract for repairs was a special contract and that Article 2226 does not provide for attorney's fees in such a case. Article 2226 provides that when any person has a valid claim against another person or corporation for personal services rendered, labor done, material furnished, or suits founded upon a sworn account, and provided proper notice is given, he can recover in addition to his claim, a reasonable amount as attorney's fees. We have concluded that the appellee's claim is a suit founded upon a sworn account and is also a claim for labor done and materials furnished and comes within the purview of said statute. Ferrous Products Company, Inc. v. Gulf States Trading Company, Inc., 160 Tex. 399, 332 S.W.2d 310.

We have examined all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.