J. K. ROSE, Appellant,

v.

ZEIGLER CATTLE COMPANY, Appellee.

No. 6068.

Court of Civil Appeals of Texas, El Paso.

Jan. 14, 1970.

Rehearing Denied Feb. 11, 1970.

Mark F. Howell, El Paso, for appellant.

Edwards, Belk, Hunter & Kerr, Frank H. Hunter, El Paso, for appellee.

## OPINION

WARD, Justice.

J. K. Rose appeals from a take-nothing judgment after jury trial in his suit against Zeigler Cattle Company. The suit involves the sale of two hundred and ten calves allegedly belonging to Mr. Rose and brought from Mexico and sold to the Zeigler Cattle Company by Laselle Taylor. The case was submitted to the jury on the appellant's theory that although Zeigler Cattle Company may have been an innocent purchaser of the calves from Laselle Taylor, it was not a bona fide purchaser for value, because the cancellation of a pre-existing indebtedness does not constitute the giving of a valuable consideration; that at the time of the sale on April 30, 1964 Zeigler canceled a pre-existing indebtedness in the amount of $14,503.33 which was owed by Mr. Taylor to Zeigler as part payment for the calves, and that Mr. Rose, the true owner of the calves, never received anything from this sale. From the view that we shall develop, the case is affirmed.

The undisputed facts that do not conflict with any theory advanced by either the appellant or the appellee are outlined. In December 1961 Mr. Rose, as the owner of a ranch in Mexico, entered into negotiations with Laselle Taylor to sell him the ranch and cattle that were on it. By May 1962 the ranch itself had been sold to Mr. Taylor, but the ownership of the mother herd was retained by Mr. Rose. An arrangement was made between Mr. Rose and Mr. Taylor whereby the mother herd would be maintained at its then size, on the ranch, but that as the calf crop or any cattle were sold off, the proceeds of the sale would be paid to Mr. Rose to apply on the balance owed on the ranch by Mr. Taylor, and eventually to apply as a purchase price of the mother herd which would later become Mr. Taylor's. After this, Mr. Rose moved from the ranch to El Paso and Mr. Taylor thereafter operated the ranch in Mexico, the mother herd still belonging to Mr. Rose remaining on the Mexico ranch and being supervised by Mr. Taylor. Mr. Rose insisted, and apparently it was agreed, that in these operations Mr. Taylor would thereafter secure the approval of Mr. Rose on the sale of any of the calf crop, approval of the selling price and the approval of the sale of any of the animals of the original mother herd so long as it was maintained at the size of the May 1962 date. Thereafter, under this agreement, sales were made by Mr. Taylor in Mexico and at El Paso, Texas. The El Paso, Texas sales were all to the Zeigler Cattle Company and, for the purposes of our opinion, must be briefly referred to.

In May 1962 a sale of 144 calves was made to the Zeigler Cattle Company by Mr. Taylor, the proceeds apparently having been paid to him. In December 1962 a cattle purchase contract was entered into between Taylor and Zeigler calling for delivery in April 1963 of 160 calves. At that time $10,400.00 was advanced on the future delivery to Taylor by Zeigler. In April 1963, this contract was completed by the delivery of 158 calves, and the balance due, after deduction of the advances, being $3,510.00, was paid to Mr. Taylor. In May 1963, a new cattle purchase contract was

entered into between Taylor and Zeigler calling for delivery in November 1963 and April 1964 of 400 calves. At that time $10,000.00 was agreed to be advanced to Taylor by Zeigler on the future delivery of these calves. In January 1964, only 35 of these calves having been delivered by Taylor to Zeigler, the May 1963 cattle purchase contract was re-negotiated by Taylor and Zeigler and a new cattle purchase contract was entered into calling for delivery of 210 calves in April 1964. At this time $10,000.00 was actually advanced to Taylor by Zeigler on this delivery, the contract, though, showing a total of $13,803.33 as down payment, as Taylor was indebted to Zeigler in the amount of $3,803.33 at that time on another transaction. A short time before the actual sale was completed, Taylor called on Zeigler for an additional $700.00 as expense money to bring these calves from the ranch to the El Paso stockyard, and this additional amount was advanced to him. On April 30, 1964 this last sale was concluded with the delivery and acceptance of the 210 calves at the stockyard. After the advancements totaling $14,503.33 on this sale were deducted, Zeigler paid Taylor $1,669.65 as the final settlement. Apparently none of the advancements on this last sale were ever paid to Mr. Rose, and he knew nothing of the fact that Taylor, at the time of entering into the various contracts, had been securing advancements against the respective future deliveries. It is for this $14,503.33 that Mr. Rose asks judgment. Though there might be some fact issue as to the ownership of the 210 calves involved in this final transaction and even though the jury found that Mr. Rose did not own these 210 calves on April 30, 1964, for the purposes of this opinion we assume that their ownership was in Mr. Rose.

■ During the two-year period over which these transactions occurred, Mr. Rose had no contact with the Zeigler Cattle Company in regard to them and never questioned the manner in which they were handled. Taylor was permitted to manage the herd as he saw proper, had actual authority to sell the calves after contacting Mr. Rose as to price and the number to be sold, had the actual authority to cross and deliver the calves to El Paso, the apparent authority to enter into the contracts, the apparent authority to execute the bills of sale and to accept the money paid. The only matter that is questioned is any type of authority to secure down payments against future deliveries. Although it was the custom and usage of the Zeigler Cattle Company to make down payments and to make advances on future deliveries of cattle, Mr. Rose, in his twenty years of dealing with the Zeigler Cattle Company before the sale of his ranch, had never done business in this fashion.

With all of these facts and former dealings of the parties being unquestioned and acceptable to Mr. Rose, we feel that Zeigler Cattle Company was acting with ordinary care and prudence in the transaction in question and was justified in believing that Taylor had the actual authority to receive the down payments, to secure the advancements, to execute and deliver the bill of sale to the calves in question, and to accept the balance of the purchase price. Davis Motors, Inc. v. Peel, 354 S.W.2d 408 (Tex. Civ.App., Ft. Worth 1962, no writ); United Federal Life Insurance Company v. Cloud, 370 S.W.2d 147 (Tex.Civ.App., Eastland 1963, no writ). This is particularly true where Mr. Taylor was the general manager of the ranching operations with the actual authority to sell these calves. The appellant's first four points are overruled.

■ Certain leading questions were propounded to the general manager of the Zeigler Cattle Company in a deposition offered by the appellee at the trial, and to which complaint is now made. We have examined each of the questions and answers and find that some of the matters had been previously established by the appellant, some related to undisputed facts;

**368**

and some related to matters which we have found immaterial for our discussion. The final point is overruled.

The judgment of the trial court is affirmed.